## E. ARENDELL *v.* A. D. ARENDELL, et al.

*At the time of their marriage, in Alabama, the spouses intended to fix their matrimonial domicil in Mississippi, which they accordingly did do. The right of the husband to slaves owned by his wife at the time of the marriage, must be determined, by the laws of Mississippi and not of Alabama.*

APPEAL from the District Court of the parish of Morehouse, *Richardson*, J. *Robertson & Boatner, Todd & I. N. S. Richardson,* for plaintiff. *McGuire & Ray,* for defendants and appellants.

BUCHANAN, J. The plaintiff was married to the defendant, *Arendell,* in Green county, Alabama, in the year 1843, and removed with her husband, immediately after the marriage, to Mississippi, where they resided until 1845, when they removed to Louisiana. At the time of the marriage, plaintiff owned certain slaves, which, or their increase, she claims as her property in this suit; and the question is, whether the law of Alabama, or of Mississippi, is to govern the right of property in said slaves. It is admitted in argument that according to the common law in force in Alabama, the slaves of the wife would become the property of the husband, by the effect of the marriage; while by the Mississippi Statute of 1839, commonly called the Woman's Law, (Hutchinson's Miss. Code, page 497) they would remain the separate property of the wife.

The petition alleges that plaintiff intermarried with *A. D. Arendell* "with the avowed intention of herself and husband, expressed before and at the time of said marriage, of making their permanent residence in the State of Mississippi, which said intention was carried into effect in a few days, by her said husband and herself actually removing to the State of Mississippi."

The District Judge charged the jury, who tried the case, as follows: "It may, as it often does, occur, that the husband has no residence, or having one, it is the intention of the parties previous, and at the time of the marriage, to fix the matrimonial domicil in some other State. Cases of this kind are governed by the well recognized principle of law, that the laws of the intended domicil of the husband are to govern the rights of the parties. In such cases, the jury should be well satisfied, that the parties at the time of the marriage, intended to fix their matrimonial domicil elsewhere, and that that intention

was actually carried into effect." We have no doubt of the soundness of this charge. The leading case in Louisiana upon the point is *Ford* v. *Ford*, 2d N. S. 574, and the doctrine was settled upon a review of all the cases in *Hayden* v. *Nutt*, 4th Annual, 66. See also Story's Conflict of Laws, Section 199.

The weight of evidence is, we think, on the side of a establishment of the husband in Mississippi previous to his marriage; and the fact of the expressed intention of the parties to select Mississippi for their place of residence, is also proved. As to the fact of the actual removal of the parties to Mississippi, there is no contradiction in the evidence.

Several bills of exceptions were taken to rulings of the Court on points of evidence.

We think the Court did not err in rejecting the deposition of Mrs. *Sanders.* It was taken in a suit to which her husband was no party, it is true. But that very circumstance, while it probably removes the disqualification of the witness on the score of relationship, is a conclusive ground against its reception in this suit. For her husband, against whom the testimony is now offered, had no opportunity to cross-examine the witness.

The interest of *Barham* was such as to disqualify him; and he should not have been received as a witness for defendant. *Barham*, as the Sheriff of the parish of Morehouse, had sequestered the negroes under a writ sued out by plaintiff, in a suit against her husband. Subsequently the husband bonded the property sequestered; and made use of his possession, to sell the negroes to the defendant, *Sanders*, pending the suit in which the writ of sequestration had been issued. The consideration of the sale to *Sanders*, was in part, notes of the purchaser; which notes were transferred to *Barham*, and are held by him. If the present suit, which is brought to annul the sale of the slaves to *Sanders*, be decided in favor of plaintiffs, it is plain that the consideration of the notes of *Sanders*, held by *Barham*, will have failed. As to *Barham's* notice of the consideration of the notes, it is abundantly proved by the official connection which he has had with these different law suits, no less than by the intimate knowledge which he swears he has had of the affairs of the *Arendells* ever since their marriage. We think that the interest of this witness was an interest not in the question alone, but in the event of the suit.

The appellant complains of the allowance of five hundred dollars damages, by the jury, in accordance with the prayer of the petition. But we are not disposed to interfere with this portion of the verdict. The conduct of the defendant, *Sanders*, in this transaction, appears in a very unfavorable light. Intimately acquainted with these parties and their circumstances before and since their marriage, he seems to have assisted *Arendell*, a confirmed drunkard, in stripping his old and infirm wife of the last remains of her property; and to have appropriated to himself the spoils, under the semblance of a conveyance from *Arendell.* The result is proved to have been, that plaintiff is reduced to a state of complete destitution, and depends upon the charity of her neighbors for subsistence.

The verdict and judgment are defective in not assigning a date to the commencement of the wages of the slaves, and must be amended in that particular.

It is therefore adjudged and decreed, that the judgment of the District Court be amended, by fixing the date of commencement of the hire of the slaves at the 19th February, 1853; and as so amended, that it be affirmed, with costs.